IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| FARHAD KHORASANI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:22-cv-72 |
| | ) | |
| | ) | **TRIAL BY JURY** |
| ANTI-DEFAMATION LEAGUE, | ) | **IS DEMANDED** |
| WWW.ISRAELLYCOOL.COM, | ) | |
| DAVID LANGE, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| MATTHEW SINGER | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff, Farhad Khorasani, by counsel, files the following Complaint against defendants, Anti-Defamation League ("ADL"), www.Israellycool.com, David Lange ("Lange"), and Matthew Singer ("Singer"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$10,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury, (c) costs incurred – arising out of Defendants' defamation and conspiracy. In addition to money damages, Plaintiff seeks injunctive relief to prevent Defendants from continuing to republish the false and defamatory statements at issue in this action.

In support of his claims, Plaintiff states the following facts:

1

## I. INTRODUCTION

1. Plaintiff is Iranian. He is a human rights and international law attorney, advocating for the rights of people who are targets of discrimination, bigotry, racism, holocaust and terrorist attacks, including Blacks, Muslims, Palestinians and Iranians.

2. Over the course over several years now, Defendants have engaged in a multi-state coordinated and sustained defamation campaign to get Plaintiff disbarred, to render him unemployable, and to destroy his reputation.

3. In this action, Plaintiff seeks special damages and actual damages for the insult, embarrassment, humiliation, mental anguish (past and present), injury to his name and professional reputation (past and present), and loss of business and income caused by Defendants' defamation and conspiracy.

## II. PARTIES

4. Plaintiff is a private individual. He is a citizen of California.

5. ADL is a non-profit corporation organized under the laws of the District of Columbia. Its principal place of business is New York. ADL operates a network of 25 regional offices in local communities across the country, including in Virginia. ADL holds itself out to the public as an "anti-hate organization that seeks to stop the defamation of the Jewish people". In truth, however, ADL is a hate speech group who, in this case, engaged in egregious defamation and vile religious discrimination.

6. www.israellycool.com is a website owned and operated by Lange. Lange is, upon information and belief, a citizen of Israel. Lange transacts substantial business in the United States, including Virginia. He solicits and receives substantial donations for his content. In addition to his website, Lange operates multiple social media platforms,

including a Twitter account, https://twitter.com/Israellycool, where he republished the false and defamatory statements at issue in this case to his 28,000+ followers in the United States. Lange regularly uses www.israellycool.com to defame and disparage Iranians, Palestinians and many others who Lange claims are demonizing the "Jewish state".

7. Singer is a citizen of California. He is a violent Zionist supremacist and extremist.

### III. JURISDICTION AND VENUE

8. The United States District Court for the Western District of Virginia has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Defendants are subject to specific jurisdiction in Virginia. They transact business in Virginia and committed multiple acts of defamation in whole or part in Virginia. They have minimum contacts with Virginia such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10. Venue is proper in the Charlottesville Division of the United States District Court for the Western District of Virginia where the defamatory statements were, in part, published pursuant to Title 28 U.S.C. § 1391(b)(2).

## IV. STATEMENT OF THE FACTS

11. In around November 2020, following Israel's threats to commit terrorist attacks in Palestine, Lebanon, Syria, and Iran, and the killing of an Iranian nuclear scientist, Plaintiff posted private political statements on his private social media accounts, including Instagram, Twitter, and Facebook.

12. Plaintiff's former law school classmate, a zionist supremacist named Samantha Johnson ("Johnson"), who was a social media "friend" and who had access to Plaintiff's private posts, took screenshots of the posts without consent and, with the help of her zionist supremacist boyfriend, Singer, doxed Plaintiff and filed a false complaint of misconduct with State Bar of California in a misguided effort to disbar Plaintiff. Johnson and Singer also sent doctored screenshots of Plaintiff's private posts to jewish and israeli organizations (initially www.israellycool.com) and interviewed with them, causing and launching a massive deplatforming and defamation campaign, unleashing pro-Israel cyber mobs on Plaintiff, and inciting extreme violence and harassment against Plaintiff.

13. Unknown persons hacked Plaintiff's email and social media accounts. His social media posts, while critical of the Israeli government, were intentionally altered to portray Plaintiff as anti-Semitic, rather than what he is known for, a human rights advocate. In order to mitigate the damage and protect himself from extremist attacks, Plaintiff posted a prominent notice on social media regarding the hacks:

far.khorasani Peace: Many of the people who know me have asked me if my social media accounts were hacked because they know I treat any human being with decency, and as a lawyer I would give the best representation to any client, & stand up for their human rights regardless of their background. To answer this question: Yes, my social media accounts were hacked, I didn't have access to my accounts until I recovered it, and that I never posted such things. It is a blogger's duty to investigate, interview, and reach out & ask before putting this out in the world, playing with people's emotions, treating a subject with such hostility, defamation, inciting of violence, & contributing to the hate in the world, turning the people against each other & setting the world on a fire that can't be undone. People should ask these blogs, & I wanna ask my colleagues, did you do any of these before writing a controversial article, only to get publicity for yourself? I would like to call on these medias, to adhere to their ethics, & to remedy this issue by taking down their articles or at least by reflecting my response to show the world that you have moral codes. I'm afraid these people have caused more hatred toward the Jewish community, than the articles they published on me. Nonetheless, I would like to apologize to the Jewish community worldwide, and let them know that my DNA tests show that I have 3% Ashkenazi Jewish in me, and I have Jewish acquaintances and friends whom I embrace & treasure. Furthermore, I understand many in the Jewish community do not agree with the policies of the state of Israel, the same way people in the USA or Iran may not agree with some of their governments' policies, which shows seeking democracy & change is what our societies have in common. Hope this would remedy the concern of anybody involved in this matter. Looking forward to a constructive & peaceful relationship with the Jewish community.

14.     Beginning in late November/early December 2020 and continuing through October 2022, Defendants, acting in concert, posted false and defamatory statements about Plaintiff on LinkedIn, Facebook, Instagram, and Twitter, tagging Plaintiff and calling him out as a vile anti-semite. In furtherance of their hate scheme, Defendants used doctored social media posts that they knew were fake to disparage Plaintiffs and instigate pro-Israel and other extremists. Defendants showed no care for Plaintiff's welfare. As a direct result of Defendants' actions, Plaintiff received hundreds of death threats and hateful messages, including that Plaintiff was a "piece of shit who deserves to be slaughtered!", a "pedophile", a "faggot", a "Nazi", a "sick, disturbed individual", and a "dumb monkey". Defendants and their agents flooded Plaintiff's professional profiles, including LinkedIn, Avvo, Facebook business, and Twitter, with false client reviews. Plaintiff had to change his personal and business phone numbers, personal and work email addresses, and all his social media handles and make them private. Plaintiff even underwent a court-ordered name change in an attempt to escape the persecution. Plaintiff now lives in constant fear for his life.

A.     **THE STATEMENTS**

   1.     ***Singer***

15.     On November 30, 2020, Singer posted a "notice" to his Facebook, stating that "antisemitism is alive and well in this country". Singer acknowledged that Plaintiff had shown no signs of racism or anti-semitic behavior at Southwestern Law School, while a student there with Singer, but, according to Singer, "[t]his solidifies what I've always known to be true: not all nazis are waving flags and screaming 'Jews will not replace us.' Many are sitting in class with you, working with you, and joking with you."

Singer falsely accused Plaintiff of "furthering the calls of white supremacists for the mass extermination of Jewish people."  Singer falsely stated that Plaintiff's "ideals match up with the calls of violence and hatred furthered by white supremacists.

16. On December 10, 2020, Singer posted to Facebook that "I learned today that the California Bar concluded their investigation into Farhad Khorasani's vile and antisemitic comments posted to both Facebook and Instagram.  They found no actionable misconduct."

17. On January 21, 2021, Singer posted the following statement to Facebook: "I want to make something absolutely clear: I stand by everything I said when exposing Farhad Khorasani's hate speech and calls for violence against the Jewish community. Singer false attributed to Plaintiff statements that Plaintiff did not make, including "Iran should do the world a favor and wipe terrorist Zionist state of Israel off the map to solve the world's Jewish problem once and for all."

18. Due to his extremist nature, Singer decided to escalate his hatred for Plaintiff.  Singer and Johnson contacted multiple jewish activist organizations who were eager to republish Singer's false accusations of "anti-semitism" without investigation. On January 20, 2021, for instance, *United With Israel* republished Singer's false and defamatory statements about Plaintiff. [https://unitedwithisrael.org/we-need-a-new-hitler-california-refuses-to-disbar-hatemongering-lawyer/].  At Singer's insistence, *United With Israel* falsely attributed to Plaintiff statements that Plaintiff never made, including "[t]he Jew anywhere is an existential threat to Ayrians, muslims [sic], and Iranians everywhere" and "Hitler has proved that he knew these terrorist semites very well. Hitler was right, we need a new Hitler".  On January 29, 2021, *United With Israel* republished more of

Singer's false and defamatory statements about Plaintiff. [https://unitedwithisrael.org/act-now-demand-action-against-hitler-promoting-california-lawyer/].  Singer's instigated a defamation jihad against Plaintiff.

    **2.**    **www.israellycool.com *and Lange***

19. Johnson and Singer also reached put to www.israellycool.com and Lange to spread the false and defamatory statements about Plaintiff to jewish and pro-Israeli factions, and to attract religious nuts and extremists.

20. www.israellycool.com was the first pro-Israeli jewish media outlet to defame Plaintiff.

21. www.israellycool.com and Lange made no effort to contact Plaintiff prior to any publication.

22. On January 19, 2021, Lange published an article on www.israellycool.com, entitled "***California Lawyer Farhad Khorasani Calls for Genocide of Jews***". [https://www.israellycool.com/2021/01/19/california-lawyer-farhad-khorasani-calls-for-genocide-of-jews/].  The scandalous headline was completely false.  Plaintiff had never called for "genocide" or mass murder of Jews.  Two days later, Lange published an second article, entitled "***Genocide-Supporting Lawyer Farhad Khorasani Doubles Down***". [https://www.israellycool.com/2021/01/21/genocide-supporting-lawyer-farhad-khorasani-doubles-down/].  Lange's egregious article falsely stated that Plaintiff was a supporter of genocide.

23. Since January 2021, www.israellycool.com and Lange have dedicated an entire internet web-page to the publication of false and defamatory statements about Plaintiff.  Among the false and defamatory statements republished between January 2021

8

and October 3, 2022 are that "Antisemitic Lawyer" Plaintiff has spread anti-semiticism, that Plaintiff called for the "genocide of Jews", and that Plaintiff called for Israel to be "nuked" by Iran. [https://www.israellycool.com/tag/farhad-khorasani/].

24. www.israelycool.com and Lange knew that their statements were false because they read Plaintiff's notice and Plaintiff informed them that his social media accounts had been hacked, and that the posts were not Plaintiff's posts. www.israellycool.com and Lange recklessly disregarded Plaintiff's contentions and falsely attributed the content of the posts to Plaintiff.

25. www.israellycool.com and Lange's false and defamatory statements were repeatedly and foreseeably republished by third parties throughout 2021 and 2022, including www.stopsntisemitism.org [https://www.stopantisemitism.org/antisemitic-incidents-63/california-lawyer-under-fire-after-calling-for-the-genocide-of-jews-praising-hitler; https://twitter.com/stopantisemites/status/1351607371827703811], who falsely represented that Plaintiff, "a CA attorney, posted: - the Jew anywhere is an existential threat - Hitler has proved he knew these terrorists semites very well - Hitler was right". *StopAntisemitism.org* called Plaintiff a "vile bigot who is ethically not fit to practice law!". [https://twitter.com/StopAntisemites/status/1352624703177961478].

### 3. ADL

26. On January 25, 2021, ADL published an article, entitled "*California lawyer under fire after calling for genocide of Jews on social media*" [https://la.adl.org/news/california-lawyer-under-fire-after-calling-for-genocide-of-jews-on-social-media/]. In the article, ADL republished the false statements of

www.israellycool.com. In a tweet, ADL "condemn[ed] [Plaintiff's] hateful rhetoric & ideology." [https://twitter.com/ADLSoCal/status/1352367381943709699].

27. The CEO of ADL falsely tweeted that it was "[a]bsolutely unacceptable to see a California lawyer incite violence against Jews". Plaintiff never incited violence against Jews or any other crimes.

28. As intended, Defendants' false statements were accepted as true, adopted and republished by hundreds of third parties, including Southwestern Law School and multiple faculty members, a litany of non-profits and activist groups, the Jewish News Syndicate, the Jewish Federation of North America, the Jewish Journal, the Simon Wiesenthal Center, the Weekly Blitz, CombatAntisemitism.org, StandWithUs, the Times of Israel, VIN News, Jewish National News and JihadWatch.com, and a pro-Israel mob of people, including Carl Gottlieb, Kevin Yermian, Jonathan Farahi, Michelle Nabati, Ryan Davidson, Malka Michelle Mororvati, Zachaery Rabi, Jason Shamtoob, Hovannes Stepanian, Gauri Kuwadekar, and Jon Sutz, who attacked Plaintiffs with vengeance. *United With Israel* juxtaposed Plaintiff's photo with a photo of Adolf Hitler, and emblazoned the photo with a chyron that read, "**We Need A New Hitler: California Refuses to Disbar the Hatemongering Lawyer**". [https://unitedwithisrael.org/we-need-a-new-hitler-california-refuses-to-disbar-hatemongering-lawyer/].

29. Defendants' statements are materially false. Plaintiff is not anti-semitic. In fact, he is part jewish. Plaintiff did not incite violence upon anyone. Plaintiff is not and never has been a danger to persons of the jewish faith. Plaintiff did not call for genocide of any jews. He did not call upon Iran to "nuke" Israel. Plaintiff did not engage

in any action for which he should have been disbarred. Plaintiff did not commit any crimes. Defendants falsely attributed to Plaintiff statements that he never made.

30. Plaintiff suffered permanent injury to his reputation and impairment and injury to his law practice as a result of the defamation. Defendants enabled and caused a mob to come after Plaintiff. Plaintiff applied for multiple employment positions with law firms (including an associate position with Sasooness law firm), and Immigration and Asylum officer positions with USCIS, but has been unable to secure outside employment to this day. Plaintiff's once excellent business and professional relationships have been destroyed.

## COUNT I – DEFAMATION

31. Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

32. Defendants and their agents made and published to third-parties, including, but not limited to, their subscribers, readers, viewers and social media followers, numerous false factual statements of and concerning Plaintiff. These statements are detailed verbatim above. Defendants' false and defamatory statements were published and republished without privilege, justification or legal excuse of any kind. The false and defamatory statements were not published in good faith or through misinformation or mistake. Defendants published the words intentionally to harm Plaintiff's business and destroy his reputation.

33. Defendants' false statements constitute defamation or defamation by implication. The statements impute to Plaintiff crimes and an unfitness to perform the

duties of an office or employment for profit. Defendants' statements also severely prejudice Plaintiff in his profession as an attorney.

34. By publishing the statements on the Internet and via social media, Defendants knew or should have known that their false and defamatory statements about Plaintiff would be republished over and over and over by third-parties millions of times to Plaintiff's detriment and injury. By tweeting the statements and by encouraging others to retweet and post the statements, Defendants created an unreasonable risk that the defamatory matter would be communicated by third-parties. Republication in 2020, 2021 and 2022 was the natural, foreseeable, reasonably expected and probable consequence of Defendants actions and was actually and/or presumptively authorized by Defendants. Defendants are liable for the republications of the false and defamatory statements by third-parties.

35. As a result of Defendants' false and defamatory statements, Plaintiff was held up to world condemnation, scorn and public humiliation. He has been forced to endure vicious attacks by pro-Israeli fanatics and internet trolls. Defendants directed false and defamatory statements at Plaintiff as a private individual with the specific intent to harm Plaintiff's reputation. Defendants acted negligently. They lacked reasonable grounds for any belief in the truth of their statements.

36. Defendants made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false. Defendants acted with actual malice and reckless disregard for the truth for the following reasons:

      a.     Defendants knew the statements were false. Defendants fabricated statements about Plaintiff and attributed statements to Plaintiff that Defendants knew Plaintiff never made.

      b.     Defendants recruited and incited a pro-Israeli fanatical mob to attack Plaintiff and ruin him.

      c.     Plaintiff notified Defendants that the statements were false and defamatory. In spite of actual knowledge, Defendants published and republished the statements.

      d.     Defendants and their agents exhibited extreme bias, ill-will and a desire to hurt Plaintiff because he is Muslim and Iranian. Defendants chose to manufacture and publish false statements about Plaintiff. They did not act in good faith because, in the total absence of evidence, they could not have had an honest belief in the truth of their statements about Plaintiff.

37. As a direct result of Defendants' defamation and defamation by imlication, Plaintiff suffered special damages and actual damages, including, but not limited to, insult, pain and suffering, emotional distress and trauma, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to personal and professional reputations, loss of enjoyment of life, loss of business and income, diminished future earning capacity, out-of-pocket expenses and costs, in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

## COUNT II – COMMON LAW CONSPIRACY

38. Plaintiff restates paragraphs 1 through 37 of this Complaint, and incorporates them herein by reference.

39. Beginning in November 2020 and continuing through the present, Defendants combined, associated, agreed or acted in concert together and with others for the express purposes of promoting, publishing and republishing false and defamatory statements about Plaintiff and injuring him. In furtherance of the conspiracy and preconceived plan, Defendants engaged in a joint scheme with others the unlawful purpose of which was to attack and injure Plaintiff's personal and professional reputations. Defendants' joint purpose and plan is evidenced by their social media communications, and the content and timing of their messaging about Plaintiff.

40. Defendants acted intentionally, purposefully, without lawful justification, and with the express knowledge that they and their confederates were defaming Plaintiff and impugning his character. As evidenced by their concerted action online and via social media, Defendants acted with the express and malicious intent to cause Plaintiff permanent harm.

41. Defendants' actions constitute a conspiracy at common law.

42. As a direct result of Defendants' willful misconduct, Plaintiff suffered special damages and actual damages, including, but not limited to, insult, pain and suffering, emotional distress and trauma, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to personal and professional reputations, loss of enjoyment of life, loss of business and income, diminished future earning capacity, out-of-pocket expenses and costs, in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

## COUNT III – <u>PERMANENT INJUNCTION</u>

43. Plaintiff restates paragraphs 1 through 42 of this Complaint, and incorporates them herein by reference.

44. Defendants, acting in concert, disseminated false and defamatory statements that caused irreparable harm to Plaintiff. Plaintiff is unable to repair his personal and professional reputations with the persons that Defendants unilaterally contacted, especially the millions on Facebook and Twitter whose identities are unknown.

45. Monetary damages will not provide an adequate remedy for Plaintiff because, in the event Defendants continue to defame Plaintiff, he would be required to bring a succession of lawsuits to deter Defendants' continuing defamation. Monetary damages may not effectively deter "judgment proof" or wealthy defendants.

46. In light of the balance of the hardships between Plaintiff and Defendants, a remedy in equity is warranted because Defendants remain able to express themselves in a manner that does not repeat the statements that have been determined to be defamatory.

47. Public interest would be served by an injunction narrowly tailored to prohibit repetition of the statements set forth above in this Complaint that qualify as defamatory under Virginia law because such an injunction does not threaten to silence Defendants completely.

48. Because Defendants have engaged in repeated acts of defamation *per se*, and the defamatory conduct at issue threatens to continue in the future, they should be permanently restrained and enjoined from publishing the defamatory statements set forth above to recipients within the United States by mail, email, or other social media.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of the Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter Judgment against Defendants, jointly and severally, as follows:

A. Compensatory damages in the amount of $10,000,000.00 or such greater amount as is determined by the Jury;

B. Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

C. Prejudgment interest until the date Judgment is entered at the maximum rate allowed by law;

D. Postjudgment interest at the maximum rate allowed by law;

E. Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED: November 30, 2022

FARHAD KHORASANI

By: __*/s/ Steven S. Biss*__
        Steven S. Biss, Esquire
        (Virginia State Bar No. 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:   (804) 501-8272
        Facsimile:   (202) 318-4098
        Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*